IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

F I L E D

JUL − 9 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

HANY GIRGIS, *et al.*,          )
                                )
              Plaintiffs,       )
                                )
v.                              )          CASE NO.  1:11-cv-1287
                                )
SALIENT SOLUTIONS, INC., *et al.*,  )
                                )
              Defendants.       )

**MEMORANDUM OPINION**

This Matter is before the Court on Defendant Frontenac Company LLC's ("Frontenac")

Motion to Dismiss Counts I, II, V, and VI Pursuant to Rule 12(b)(6) (Dkt. No. 24), Defendants

Salient Solutions, Inc., Salient Federal Solutions, Inc., Ted Dunn, S. Bradford Antle, and Ray

Oleson's (collectively, "Salient Defendants") Motion to Dismiss Plaintiffs' First, Second, Fourth,

and Fifth Causes of Action for Failure to State a Claim (Dkt. No. 27), and Salient Defendants'

Motion to Compel Arbitration as to Counts 3 and 4 of the Complaint Claiming Breach of

Contract and For a Stay of Any Tort Claims which Survive Dismissal (Dkt. No 34).

With respect to Frontenac's Motion to Dismiss, there are three issues before the Court.

The first issue is whether the Court should grant Frontenac's Motion to Dismiss Plaintiffs' First

Cause of Action (Fraud in the Inducement) and Second Cause of Action (Constructive Fraud)

where Plaintiffs allege that during the acquisition discussions (1)"Defendants" made

misrepresentations; (2) Walter Florence, one of Defendant Salient Federal Solutions, LLC.'s

("Salient Federal") principal negotiators, made a series of misrepresentations and/or omissions to

induce Plaintiffs to sell SGIS to Salient Federal under the Stock Purchasing Agreement ("SPA")

1

containing a two-tier payment plan; and (3) at the time of the negotiation, Mr. Florence was serving on the board of directors of Salient Solutions LLC ("Salient LLC"), the parent company of Salient Inc., and as the Managing Director of Frontenac. The Court grants Frontenac's Motion to Dismiss the First and Second Causes of Action because Plaintiffs fail to allege with specificity that any of the misrepresentations were made by Frontenac or its agents.

The second issue is whether the Court should grant Frontenac's Motion to Dismiss Plaintiffs' Fifth Cause of Action ("Violation of Va. Code §§ 18.2-499 and 500," i.e. conspiracy) where, in addition to Florence's misrepresentations and/or omissions, Plaintiffs generally allege that (1) "Florence and other Frontenac personnel participated directly in Defendants' scheme to lure Plaintiffs into selling SGIS and participated directly in all of the negotiations concerning the Acquisition"; and (2) "Frontenac has taken no steps to correct Defendant's fraud." The Court grants Frontenac's Motion to Dismiss the Fifth Cause of Action because Plaintiffs fail to plead with particularity that Frontenac or its other agents were involved in a conspiracy targeting Plaintiffs.

The third issue is whether the Court should grant Frontenac's Motion to Dismiss Plaintiffs' Sixth Cause of Action (Tortious Interference with Contract) where Plaintiffs merely allege that (1) "Frontenac interfered with Plaintiffs' contractual rights by causing Salient [Federal] to renege on its contractual obligations under the SPA"; (2) "Frontenac knew that Plaintiffs had a reasonable business expectancy created through Plaintiffs' agreement with Salient [Federal] and Salient [INC]"; and (3) "[t]he improper and fraudulent methodology for calculating SGIS's 2010 gross profits that Frontenac devised or approved was intended to deprive Plaintiffs of their contractual right to receive the Performance Payment." The Court grants Frontenac's Motion to Dismiss Plaintiffs' Sixth Cause of Action because Plaintiffs fail to

2

allege any facts concerning how Frontenac or its agents interfered with Plaintiffs' contract with Salient Federal.

With respect to Salient Defendants' Motion to Dismiss, there are four issues before the Court. The first issue is whether the Court should grant Salient Defendants' Motion to Dismiss the First Cause of Action (Fraud in the Inducement) and the Second Cause of Action (Constructive Fraud) against Defendant Mr. Oleson where Plaintiffs do not allege any specific misrepresentations or omissions by Mr. Oleson. The Court grants Salient Defendants' Motion because Plaintiffs fail to allege any specific misrepresentations or omission attributable to Mr. Oleson in the Complaint.

The second issue is whether the Court should grant Salient Defendants' Motion to Dismiss the First Cause of Action (Fraud in the Inducement) and the Second Cause of Action (Constructive Fraud) against Salient INC and Salient Federal (collectively "Salient") and Messrs. Antle and Dunn where Plaintiffs allege that individual Defendants (1) commented that the two-part payment structure was "fair" and "equitable"; (2) made false statements concerning the financial incentives of Salient management to maximize gross profits; (3) made false statements about past acquisitions; (4) made false assurances that they would fairly determine the Performance Payment in a manner consistent with SGIS's past accounting practices with no intent to perform and that Plaintiffs' relied on that promise to their detriment; and (5) failed to disclose material facts to Plaintiffs prior to the closing of the acquisition. The Court grants Salient Defendants' Motion to Dismiss the First and Second Causes of Action against Salient and Messrs. Antle, and Dunn for five reasons. First, many alleged misleading statements were opinions or business puffery, which lack the necessary materiality to be actionable. Second, the statements concerning the financial incentives of Salient management to maximize gross profits

3

cannot support fraud claims because (1) they are opinions or statements concerning future events; and (2) even if some of these allegations are statements of fact, Plaintiffs fail to specifically allege that these representations were false. Third, with respect to the statements about past acquisitions, Plaintiffs cannot properly plead that it relied on a misrepresentation when it also pleads that it investigated the alleged misrepresentation. Fourth, this allegation that Defendants did not intend calculate the Performance Payment in a manner consistent with past practices is implausible. Fifth, the alleged omissions are not actionable because they do not concern material facts, and even if they do concern material facts, Plaintiffs fail to allege that Defendants intentionally and willfully concealed material facts and that they knew that Plaintiffs were acting upon the assumption that the facts did not exist.

The third issue is whether the Court should grant Salient Defendants' Motion to Dismiss Plaintiffs' Fourth Cause of Action (Breach of Implied Covenant of Good Faith and Fair Dealing) where Plaintiffs allege that Salient breached its implied covenant of good faith and fair dealing by (1) calculating the Gross Profit Statement in a manner that is inconsistent with past practices; (2) delaying the collection of revenue by Apptis as provided under Section 6.5 of the SPA, and (3) failing to resolve in good faith any disputes regarding the Gross Profit Statement as required by Section 1.3(c). The Court grants Salient Defendants' Motion to Dismiss the Fourth Cause of Action because Plaintiffs' allegations concern conduct that is addressed by the express terms of the contract.

The fourth issue is whether the Court should grant Salient Defendants' Motion to Dismiss Plaintiffs' Fifth Cause of Action ("Violation of Va. Code §§ 18.2-499 and 500," *i.e.* conspiracy) where all allegations are made against executives of Salient Federal and Salient LLC, the parent

company of Salient Federal.[1]  The Court grants Salient Defendants' Motion to Dismiss Plaintiffs'
Fourth Cause of Action because all of the alleged conspirators belong to a single legal entity,
which cannot legally form a conspiracy.

    With respect to Salient Defendants' Motion to Compel Arbitration and for a Stay of Any
Tort Claims Which Survive Dismissal, the issue is whether the Court should grant Salient
Defendants' Motion where the parties are not able to agree upon a joint determination of the
Gross Profit Statement after Plaintiffs timely disputed the Gross Profit Statement and Defendants
allegedly provided woefully incomplete data in response to Plaintiffs' request for details
supporting Defendants' calculation.  The Court grants Salient Defendants' Motion to Compel
Arbitration and Stay Proceedings as to the Third Cause of Action (Breach of Contract) because
the SPA requires the disputes regarding the Gross Profit Statement be submitted to the
Accounting Firm, which is well-suited to render a final and binding determination.  Furthermore,
the Court denies as moot Salient Defendants' Motion to Compel Arbitration and Stay
Proceedings with respect to the Fourth Cause of Action (Breach of Implied Covenant of Good
Faith and Fair Dealing) because the Court dismiss the Fourth Cause of Action for failure to state
a claim.

## I.  BACKGROUND

    This case concerns a contract dispute between buyers and sellers regarding payments for
the sale of a company.  Plaintiffs Hany Girgis, Summer Girgis, Vincent Virga, and Joyce
Worthington Virga owned SkillStorm, Inc., which did business as "SGIS."  SGIS was a
technology-based government contracting firm with Hany Girgis as the CEO and Vincent Virga
as the President (collectively, they are referred as the "Principal Shareholders").  Defendant
Salient Solutions, Inc. ("Salient INC") is a wholly-owned subsidiary of Salient LLC.  Defendant

---

[1] The Court dismisses this claim against Frontenac.

Salient Federal is a wholly-owned subsidiary of Salient INC. Defendant Frontenac, a private equity firm, has majority ownership of Salient LLC, the ultimate parent company of both Salient INC and Salient Federal. Walter Florence, a Managing Director of Frontenac, and Michael Langdon, a principal/vice president of Frontenac, also served on Salient LLC's board of directors. Defendant S. Bradford Antle served as Salient Federal's President and CEO; Defendants Ray Oleson and Ted Dunn served as Salient Federal's Chairman of the Board and Chief Financial Officer, respectively.

After months of negotiation, Plaintiffs (the "Sellers"), sold SGIS (the "Company"), to Salient Federal (the "Buyer"), for $85 million cash up front, plus Performance Payment. Under the SPA dated June 28, 2010, the Performance Payment equals to "the Total Incremental Gross Profits multiplied by $4.50," but it should not exceed $25 million. Compl. Ex. A at 2. The "Total Incremental Gross Profits" equals to "the Company Gross Profits <u>minus</u> Thirty Million Three Hundred Thousand Dollars ($30,300,000)." Compl. Ex. A at 3. Section 1.3(a)(i) of the SPA provides:

> "<u>Company Gross Profits</u>" means an amount equal to
> (a) the Company's revenues during the Performance Period, as determined in accordance with GAAP [*i.e.*, generally accepted accounting principles] consistent with past practices and procedures of the Company . . . <u>less</u>
> (b) the Direct Costs related to such revenues . . . and any fringe benefit expenses on direct labor (excluding amounts classified as "cash in lieu of fringe" on the Company's general ledger or medical insurance), in each case determined in accordance with GAAP consistent with past practices and procedures of the Company . . . .

Compl. Ex. A at 2. The "Performance Period" is "the twelve (12) month period beginning on and including January 1, 2010 and ending on and including December 31, 2010." Compl. Ex. A at 3. The Complaint alleges that, essentially, the Performance Payment would be calculated by

multiplying $4.50 to the improvements in gross profit produced between 2009 and 2010.

Additionally, Section 1.3(b) of the SPA provides

> On or before ninety (90) days after the end of the Performance Period, the Company shall cause to be prepared a statement (the "Gross Profits Statement"), which shall set forth the amount of the Performance Payment, if any, and the calculation thereof, including the Total Incremental Gross Profits, and shall deliver the Gross Profits Statement to the Sellers' Representative.[2]

Compl. Ex. A at 3. The SPA also provides a mechanism for resolving parties' disagreements

concerning the Performance Payment:

> If the Sellers' Representative disputes any amount set forth in the Gross Profits Statement, the Sellers' Representative will provide the Buyer within thirty (30) days of receipt of the Gross Profits Statement detailed written explanations of any disputed items in the Gross Profits Statement . . . . In the event that the Sellers' Representative shall timely dispute the Gross Profits Statement, then within a further period of fifteen (15) days from the date the Buyer receives such dispute notice . . . the Parties will attempt to resolve in good faith any disputed items and such resolution and any required adjustments resulting therefrom shall be final and binding on the Parties. In the event the Buyer and the Sellers' Representative shall be unable to agree upon a joint determination of the Gross Profits Statement . . . then within five (5) days after the expiration of such fifteen (15)-day period, the Buyer and the Sellers' Representative shall submit the dispute to the Accounting Firm. The Buyer and the Sellers' Representative shall request that the Accounting Firm render its determination prior to the expiration of thirty (30) days after the dispute is submitted to it, and such determination and any required adjustments resulting therefrom shall be final and binding on [the Buyer and the Sellers] . . . .

Compl. Ex. A at 3–4. The Accounting Firm means "an accounting firm mutually satisfactory to

the Buyer and the Sellers' Representative." Compl. Ex. A at A-1. Additionally, the SPA

provides that the agreement "shall in all respects be interpreted, construed and governed by and

in accordance with the laws of the State of Delaware." Compl. Ex. A at 73.

In a letter dated October, 28, 2010, Salient Federal's attorney stated that the SPA

appeared to reflect a mutual mistake and suggested that two items "cash in lieu of fringe" and

---

[2] The Sellers' Representative "has the meaning given to such term in Section 2.3(a)," which provides that Hany Girgis is Seller's representative for purpose of SPA . Compl. Ex. A at 10, A-13.

"medical insurance" should not have been excluded from the SPA's definition of "Company Gross Profits." Compl. Ex. B. The attorney proposed an amendment to the SPA and threatened to initiate litigation if Plaintiffs refused to consent to the amendment. Compl. Ex. B. Plaintiffs refused to accede to Salient Federal's demands. Compl. ¶ 70. Then, in a letter dated March 31, 2011, Salient Federal informed Plaintiffs that the "Company Gross Profits for the Performance Period equaled $19,057,576 and the Total Incremental Gross Profits was less than $0. As a result no Performance Payment is due under the Agreement." Compl. Ex. C at 2.

Plaintiffs allege that they timely disputed the Gross Profit Statement and made several requests that Defendants provide to them "the detailed calculations underlying the Gross Profits Statement and the data necessary to make a complete and accurate calculation of SGIS's 2010 gross profit." Compl. ¶ 143. Plaintiffs further allege that Defendants refused to provide Plaintiffs "any meaningful response to those requests, preferring instead to provide only woefully incomplete data." Compl. ¶ 144.

On November 23, 201, Plaintiffs commenced this action against Salient, Frontenac, and Messrs. Dunn, Antle and Oleson (collectively "Officer Defendants"). The Complaint contains six claims:

> (1) First Cause of Action (Fraud in the Inducement against All Defendants);
> (2) Second Cause of Action (Constructive Fraud against All Defendants);
> (3) Third Cause of Action (Breach of Contract/Request for Declaratory Judgment against Salient [Federal] and Salient [INC]);
> (4) Fourth Cause of Action (Breach of Implied Covenant of Good Faith and Fair Dealing against Salient [Federal] and Salient [INC]);
> (5) Fifth Cause of Action (Violation of Va. Code §§ 18.2-499 and 500 against All Defendants); and
> (6) Sixth Cause of Action (Tortious Interference with Contract by Frontenac).

Compl. at 32–37.

Plaintiffs allege that Defendants initially offered to buy SGIS stock for a cash price of

$100 million, but withdrew the offer two months later. Defendants then submitted a revised

offer to purchase SGIS for an up-front cash payment of $85 million and a post-closing

Performance Payment of up to $25 million, which would be calculated by multiplying $4.50 to

the improvements in gross profit produced between 2009 and 2010.

Plaintiffs allege that Officer Defendants and Mr. Florence, all serving as Salient Federal's

principal negotiators, made numerous material misrepresentations and omissions during the

negotiation prior to the acquisition and convinced Plaintiffs to accept the new proposal.

Plaintiffs' specific allegations are summarized below:

(1)  On or about October 21, 2009, Officer Defendants and Mr. Florence met with
the Principal Shareholders. During this initial introductory meeting, Mr.
Virga asked them if they had been sued or had any disputes with principals of
the companies they had purchased during their tenure at SI International,
another company Officer Defendants served as principal executive officers.
In response to that question, Mr. Antle "stated 'No. Absolutely not. In fact,
we'll give you references. We have great relationships with all of them.'"
Compl. ¶ 39. "Defendants provided Plaintiffs with a sampling of references"
and Plaintiffs contacted all of them and "confirmed that Defendants and SI
International had not engaged in litigation with those companies." Compl. ¶
40. Soon after the execution of the SPA, Plaintiffs learned that Mr. Antle's
representation was false.

(2)  In or about March 2010, the Principal Shareholders, Officer Defendants, and
Mr. Florence had a conference call. Messrs. Dunn and Antle told Plaintiffs
that no additional protections beyond the SPA were necessary because
Defendants had incentive to grow SGIS's revenue and gross profit.
Additionally, they "emphasized that Frontenac would judge the performance
of the Officer Defendants based upon their ability to increase SGIS's 2010
gross profit." Compl. ¶ 44.

(3)  In another meeting on April 27, 2010, Mr. Florence told Plaintiffs that the
revised offer containing the Performance Payment was a "win-win situation"
for both sides. Compl. ¶46. He emphasized that "Frontenac assessed the
performance of the managers of its portfolio companies based upon their
ability to produce revenue and gross profit growth." Compl. ¶ 46. Mr. Dunn
stated that "SGIS's management would be penalized financially if they failed
to produce gross profit growth." Compl. ¶ 47. He "emphasized that 'if we

don't grow gross profits, we won't be here.'" Compl. ¶ 47. Mr. Dunn further "reiterated his point . . . that 'we will all be in trouble if we don't grow gross profits.'" Compl. ¶ 47. Mr. Florence "then confirmed, 'That is correct.'" Compl. ¶ 47. Messrs. Dunn and Antle further described the two-part consideration structure to be equitable and fair. No one at the meeting disputed that the statements were inaccurate.

(4) During numerous conference calls between the parties in March and April, Messrs. Dunn and Antle repeatedly represented to the Principal Shareholders that "Defendants would calculate SGIS's 2010 gross profit for the purpose of determining the Performance Payment in precisely the same manner that SGIS had previously employed in its budgeting documents and the internal financial statements that the Principal Shareholders employed to manage SGIS." Compl. ¶ 52.

Plaintiffs also allege that these misrepresentations induced Plaintiffs into entering into the SPA. The Complaint further alleges that "[b]y the time that Defendants extended the revised purchase offer and made the foregoing misrepresentations, they had already devised their plan to minimize SGIS's post-closing 2010 gross profits in order to avoid paying Plaintiffs any Performance Payment." Compl. ¶ 54. Moreover, Plaintiffs allege that they agreed on this sale because they believed "Defendants' misrepresentations and omissions concerning the Performance Payment and the financial incentives that Defendants possessed for growing SGIS's 2010 gross profit." Compl. ¶ 5. They also alleged that "[a]fter Defendants assumed control of SGIS and renamed it Salient [Federal Solutions Inc.] . . . they . . . knowingly employ[ed] multiple improper business tactics and accounting manipulations designed to reduce the Performance Payment to zero although the parties' agreement and Salient [Federal]'s true financial performance established Plaintiffs' entitlement to the entire $25 million payment." Compl. ¶ 6.

On January 6, 2012, Frontenac filed a motion to dismiss all causes of action against it for failure to state a claim. Dkt. No. 24. On the same day, Salient Defendants filed a Motion to Dismiss Plaintiffs' First, Second, Fourth, and Fifth Causes of Action against them for failure to

10

state a claim and a Motion to Compel Arbitration and for a Stay of Any Remaining Tort Claims Which Survive Dismissal. Dkt. Nos. 27 & 34. The Court addresses these motions in turn.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6) Motion to Dismiss

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal citations omitted); *see* FED. R. CIV. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 555). A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

In order to survive a Rule 12(b)(6) motion to dismiss a complaint must set forth "a claim for relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 *Twombly*, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Conclusory allegations regarding the legal effect of the facts

alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the Plaintiffs' claim is and the grounds upon which it rests," the Plaintiffs' legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Twombly*, 550 U.S. at 556 n.3.

## B. Motion to Compel Arbitration

Federal law controls the interpretation of arbitration agreements, even where a contract includes a choice of law provision. *Smith Barney, Inc., v. Critical Health Sys. of North Carolina, Inc.*, 212 F.3d 858, 861 n.1 (4th Cir. 2000).   Federal law strongly favors arbitration, and as a matter of law all ambiguities as to the scope of an arbitration clause should be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).   When faced with a valid arbitration clause, a court must order arbitration unless it is clear that the arbitration clause cannot be reasonably interpreted to cover the dispute. *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001).

## III. ANALYSIS

### A. Frontenac's Motion to Dismiss Counts I, II, V, and VI Pursuant to Rule 12(B)(6)

The Court grants Frontenac's Motion to Dismiss. The Court grants the Motion as to the First and Second Causes of Action, fraud in the inducement and constructive fraud, because Plaintiffs fail to allege with specificity any misrepresentations by Frontenac or agents of Frontenac. The Court grants Frontenac's Motion to Dismiss Plaintiffs' Fifth Cause of Action because Plaintiffs fail to plead with particularity a conspiracy involving Frontenac or its agents. The Court grants Frontenac's Motion to Dismiss as to the Sixth Cause of Action, tortious

interference with contract, because Plaintiffs fail to allege facts concerning how Frontenac or agents of Frontenac interfered with Plaintiffs' contract with Salient Federal.

### 1. First and Second Causes of Action

The Court grants Frontenac's Motion to Dismiss as to the First and Second Causes of Action, fraud in the inducement and constructive fraud, because Plaintiffs fail to allege with specificity any misrepresentations by Frontenac or its agents. In order to state a cause of action for fraudulent inducement of contract under Virginia law, "a plaintiff must allege that the defendant made misrepresentations [that] were positive statements of fact, made for the purpose of procuring the contract; that they are untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 452 (E.D. Va. 2009) (internal quotation marks and citation omitted). The elements for actual fraud are: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) resulting damage to the party misled." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citing *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). "Constructive fraud differs only in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently." *Id.*

"In alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake," but intent and other conditions of a person's mind may be alleged generally. FED. R. CIV. P. 9(b). At minimum, a plaintiff alleging fraud must describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellog Brown*

& *Root, Inc.,* 525 F.3d 370, 379 (4th Cir. 2008) [hereinafter *Wilson*] (citation omitted). These facts are commonly described as the "'who, what, when, where, and how' of the alleged fraud." *Id.* Moreover, grouping defendants together in a pleading fails to satisfy the requirement that the "who, what, when, where, and how" be pled with specificity. *Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 712 (E.D. Va. 2009) (citation omitted).

A principal may be liable for the fraud of his agent. *See Nationwide Ins. Co. v. Patterson*, 331 S.E.2d 490, 493 (Va. 1985) (citation omitted). However, it is a "well established principle that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (citation omitted). The law presumes, "that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary." *Id.* The presumption can be rebutted by well-pled allegations to the contrary. *See id.* at 70 n.13.

Throughout the Complaint, there are several allegations of misrepresentations and omissions by Mr. Florence. However, Plaintiffs fail to properly allege that any of Mr. Florence's misrepresentations and omissions were attributable to Frontenac. Plaintiffs allege that Mr. Florence served as a Managing Director for Frontenac and also served on the Salient LLC's board of directors. However, none of these entities were a party to the SPA. Moreover, Plaintiffs allege that Mr. Florence "served as Salient [Federal]'s principal negotiator during the parties' discussions regarding the Acquisition." Compl. ¶ 29. Therefore, although he was also working for Frontenac, Mr. Florence was acting on behalf of Salient [Federal] during the

contract negotiations.[3]  It follows that a valid presumption exists here that since Mr. Florence was acting for the subsidiary during the negotiations, he was "wearing the subsidiary hat."

Additionally, Plaintiffs fail to allege sufficient facts to rebut the presumption.  The Complaint contains several alleged misrepresentations and omissions from Mr. Florence. However, in every allegation impacting Mr. Florence, Plaintiffs merely reference him using the phrase, "Frontenac's Florence."  *See, e.g.*, Compl. ¶¶ 46–50.  Nonetheless, merely labeling Mr. Florence as "Frontenac's Florence" is not sufficient here as Plaintiffs fail to allege with specificity that Florence's misrepresentations were made as an agent of Frontenac, instead Salient Federal. *See Bestfoods*, 524 U.S. at 70.

Furthermore, although the Complaint is replete with allegations concerning misrepresentations made by "Defendants" collectively, these allegations, which fail to identify the individual actors, do not satisfy Rule 9(b). *See, e.g., Feeley*, 660 F. Supp. 2d at 712. Therefore, the Court grants Frontenac's Motion to Dismiss Plaintiffs' First and Second Causes of Action.

### 2.  Fifth Cause of Action

The Court grants Frontenac's Motion to Dismiss Plaintiffs' Fifth Cause of Action, violation of Va. Code §§ 18.2-499 and 500, because Plaintiffs fail to plead with particularity a conspiracy involving Frontenac or its agents.  Section 18.2-499 of the Virginia Code encompasses conspiracies to "willfully and maliciously injur[e] another in his reputation, trade, business or profession by any means whatever." VA. CODE ANN. § 18.2-499(A) (2009). Additionally, Section 18.2-500 of the Virginia Code allows victims of such conspiracies to recover treble damages and attorney's fees in a civil action. VA. CODE ANN. § 18.2-500(2009).

---

[3] The Salient Defendants also take the position that Mr. Florence should be viewed as an agent of Salient Federal and/or its parent, Salient INC. *See* Mem. in Support of the Salient Defendants' Mot. to Dismiss the First, Second, Fourth and Fifth Causes of Action for Failure to State a Claim 11 n.10.

"To state a claim for a violation of the business conspiracy statute . . . a plaintiff must allege (1) a combination of two or more persons for the purpose of willfully and maliciously injuring a plaintiffs' business, and (2) resulting damage to the plaintiff." *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 616 (E.D. Va. 2005) (citations omitted); *See* VA. CODE ANN. § 18.2-499(A) (2009).

As discussed above, Frontenac cannot be liable for the alleged fraudulent conduct of Mr. Florence who allegedly was one of Salient Federal's principal negotiators. Moreover, Plaintiffs fail to allege with specificity that Frontenac's agents were participating in the alleged conspiracy. Plaintiffs merely assert that (1)"Frontenac participated directly in all of the negotiations concerning the Acquisition"; (2) "Frontenac personnel participated directly in Defendants' scheme to lure Plaintiffs into selling SGIS to Salient [Federal] for consideration that included the phantom Performance Payment"; and (3) "Frontenac has taken no steps to correct Defendants' fraud." Compl. ¶¶ 129–30. None of these allegations are supported with any specific facts as required by the pleading standard set forth in *Twombly* and *Iqbal*. Consequently, the Court grants Frontenac's Motion to Dismiss Plaintiffs' Fifth Cause of Action.

### 3. Sixth Cause of Action

The Court grants Frontenac's Motion to Dismiss as to the Sixth Cause of Action, Tortious Interference with Contract, because Plaintiffs fail to allege any facts concerning how Frontenac or its agents interfered with Plaintiffs' contract with Salient Federal. Under Virginia law, the elements of a tortious interference action are: "(i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the

relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted." *Dunn, McCormack & MacPherson v. Connolly*, 708 S.E.2d 867, 870 (Va. 2011) (citation omitted).

As discussed above, Mr. Florence's actions are attributable to Salient Federal, not Frontenac. Moreover, Plaintiffs fail to allege specific facts to support their claim of tortious interference with contract. Plaintiffs allege that (1) "Frontenac interfered with Plaintiffs' contractual rights by causing Salient [Federal] to renege on its contractual obligations under the SPA"; (2) "Frontenac knew that Plaintiffs had a reasonable business expectancy created through Plaintiffs' agreement with Salient [Federal] and Salient [INC]"; and (3) "[t]he improper and fraudulent methodology for calculating SGIS's 2010 gross profits that Frontenac devised or approved was intended to deprive Plaintiffs of their contractual right to receive the Performance Payment." Compl. ¶¶ 196–98. These allegations are mere formulaic recitations of the elements of this claim. Without specific facts about the conduct of Frontenac or its agents, they are not adequate to state the claim of tortious interference with contract. *See Bell Atl. Corp.*, 550 U.S. at 556 n.3 (plaintiffs must provide a "statement of circumstances, occurrences, and events in support of the claim presented"). Thus, the Court grants Frontenac's Motion to Dismiss as to the Sixth Cause of Action because the Complaint lacks factual allegations to adequately state a claim of tortious interference with contract. Consequently, the Court grants Frontenac's Motion to Dismiss.

**B. Salient Defendants' Motion to Dismiss Plaintiffs' First, Second, Fourth, and Fifth Causes of Action for Failure to State a Claim**

The Court grants Salient Defendants' Motion to Dismiss. The Court grants Salient Defendants' Motion to Dismiss Plaintiffs' First and Second Causes of Action against Mr. Oleson because Plaintiffs fail to allege any specific facts to support their claims against him. The Court grants Salient Defendants' Motion to Dismiss the First and Second Causes of Action against Salient and Messrs. Antle and Dunn for five reasons. First, many alleged misleading statements were opinions or business puffery, which lack the necessary materiality to be actionable. Second, the statements concerning the financial incentives of Salient management to maximize gross profits cannot support fraud claims because (1) they are opinions or statements concerning future events; and (2) even if some of these allegations are statements of fact, Plaintiffs fail to specifically allege that these representations were false. Third, with respect to the statements about past acquisitions, Plaintiffs cannot properly plead that it relied on a misrepresentation when it also pleads that it investigated the alleged misrepresentation. Fourth, the allegation that Defendants did not intend calculate the Performance Payment in a manner consistent with past practices is implausible. Fifth, the alleged omissions are not actionable because they do not concern material facts, and even if they do concern material facts, Plaintiffs fail to allege that Defendants intentionally and willfully concealed material facts and that they knew that Plaintiffs were acting upon the assumption that the facts did not exist.

The Court grants Salient Defendants' Motion to Dismiss Plaintiffs' Fourth Cause of Action, Breach of the Implied Covenant of Good Faith and Fair Dealing, because the allegations concern conduct that is addressed by the express terms of the contract. The Court grants Salient Defendants' Motion to Dismiss Plaintiffs' Fifth Cause of Action, Violation of Va. Code §§

18

18.2-499 and 500, because all of the alleged conspirators belong to a single corporate entity, which cannot legally form a conspiracy.

### 1. First and Second Causes of Action

The Court grants Salient Defendants' Motion to Dismiss Plaintiffs' First and Second Causes of Action. The Court grants Salient Defendants' Motion to Dismiss Plaintiffs' First and Second Causes of Action against Mr. Oleson because Plaintiffs fail to allege any specific facts to support their claims against him. The Court grants Salient Defendants' Motion to Dismiss the First and Second Causes of Action against Salient and Messrs. Antle and Dunn for five reasons. First, many alleged misleading statements were opinions or business puffery, which lack the necessary materiality to be actionable. Second, the statements concerning the financial incentives of Salient management to maximize gross profits cannot support fraud claims because (1) they are opinions or statements concerning future events; and (2) even if some of these allegations are statements of fact, Plaintiffs fail to specifically allege that these representations were false. Third, with respect to the statements about past acquisitions, Plaintiffs cannot properly plead that it relied on a misrepresentation when it also pleads that it investigated the alleged misrepresentation. Fourth, the allegation that Defendants did not intend calculate the Performance Payment in a manner consistent with past practices is implausible. Fifth, the alleged omissions are not actionable because they do not concern material facts, and even if they do concern material facts, Plaintiffs fail to allege that Defendants intentionally and willfully concealed material facts and that they knew that Plaintiffs were acting upon the assumption that the facts did not exist.

In Virginia, to state a cause of action for fraudulent inducement of contract, "a plaintiff must allege that the defendant made misrepresentations [that] were positive statements of fact,

19

made for the purpose of procuring the contract; that they are untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract." *Enomoto*, 624 F. Supp. 2d at 452. The elements for actual fraud are: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Hitachi Credit Am.*, 166 F.3d at 628 (citation omitted). "Constructive fraud differs only in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently." *Id.* A principal may be liable for the fraud of his agent. *See Nationwide Ins. Co. v. Patterson*, 33 S.E.2d 490, 493 (Va. 1985).

"Because fraud must involve a misrepresentation of a present or a pre-existing fact, fraud ordinarily cannot be predicated on unfulfilled promises or statements regarding future events." *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va. 2008) (citation omitted). But "if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *Id.* To satisfy the pleading standard, however, a plaintiff must clearly allege a contemporaneous intent not to perform at the time a fraudulent statement is made. *Station # 2, LLC v. Lynch*, 695 S.E.2d 537, 540 (Va. 2010). Moreover, under no circumstances, will a promise of future action support a claim of constructive fraud.[4] *Supervalu*, 666 S.E.2d at 342 (citing *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 560 (1998) and *Colonial Ford Truck Sales v. Schneider*, 228 Va. 671, 677 (1985)); *see also Station # 2*, 695 S.E.2d at 540 n.3.

---

[4] The rationale underlying this rule is that "[i]f unfulfilled promises, innocently or negligently made, were sufficient to support a constructive fraud claim, every breach of contract would potentially give rise to a claim of constructive fraud." *Supervalu*, 666 S.E.2d at 342 (citing *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 560 (1998), *Blair Constr. v. Weatherford*, 253 Va. 343, 347 (1997), and *Lloyd v. Smith*, 150 Va. 132, 145 (1928)).

"In alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake," but intent and other conditions of a person's mind may be alleged generally. FED. R. CIV. P. 9(b). At minimum, a plaintiff alleging fraud must describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wilson*, 525 F.3d at 379 (citation omitted). These facts are commonly described as the "'who, what, when, where, and how' of the alleged fraud." *Id.* Moreover, broad brush general group allegations are not sufficient in fraud claims. *Feeley*, 660 F. Supp. 2d at 705.

    a.   *The First and Second Causes of Action against Mr. Oleson*

The Court grants Salient Defendants' Motion to Dismiss Plaintiffs' First and Second Causes of Action against Mr. Oleson because Plaintiffs fail to allege any specific facts support their claims against him. Although Plaintiffs allege that Mr. Oleson attended the October 21, 2009 meeting and participated in the March 2010 conference call, the Complaint does not allege that Mr. Oleson made any false statements to Plaintiffs. Additionally, in many incidences, Plaintiffs only generally allege that "Defendants made a series of material misrepresentations and omissions . . . ." *See, e.g.*, Compl. ¶ 37. However, allegations against "Defendants" collectively do not satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). *See Feeley*, 660 F. Supp. 2d at 705 ("The Complaint while long, is replete with broad brush general group allegations, group pleading which is not sufficient in fraud claims"). Thus, the Court grants Salient Defendant's Motion to Dismiss Plaintiffs' First and Second Causes of Action against Mr. Oleson because Plaintiffs fail to allege with particularity that he made any specific misrepresentations or omissions.

   *b.* *The First and Second Causes of Action against Salient and Messrs. Antle and Dunn*

     The Court grants Salient Defendants' Motion to Dismiss the First and Second Causes of

Action against Salient and Messrs. Antle and Dunn for five reasons. First, many alleged

misleading statements were opinions or business puffery, which lack the necessary materiality to

be actionable. "It is well settled that a misrepresentation, the falsity of which will afford ground

for an action for damages, must be of an existing fact, and not the mere expression of an

opinion." *Lambert v. Downtown Garage, Inc.,* 553 S.E.2d 714, 717 (2001) (citation omitted).

"The mere expression of an opinion, however strong and positive the language may be, is no

fraud." *Id.* "Commendatory statements, trade talk, or puffing, do not constitute fraud because

statements of this nature are generally regarded as mere expressions of opinion which cannot

rightfully be relied upon, at least where the parties deal on equal terms." *Id.* Plaintiffs allege

that during contract negotiations, Messrs. Antle and Dunn stated that the two-part payment

structure was "fair" and "equitable", and Mr. Florence stated that it was a "win-win" situation.

These statements are nothing more than opinions or puffery, which cannot be the actionable.

     Second, the statements concerning the financial incentives of Salient management to

maximize gross profits cannot support fraud claims because (1) they are opinions or statements

concerning future events, but not existing facts; and (2) even if some of these allegations are

statements of fact, Plaintiffs fail to specifically allege that these representations were false.

Plaintiffs allege that (1) Messrs. Dunn and Antle "emphasized that Frontenac would judge the

performance of the Officer Defendants based on their ability to increase SGIS's 2010 gross

profit"; (2) Mr. Dunn stated that "SGIS's management would be penalized financially if they

failed to produce gross profit growth"; (3) Mr. Dunn "emphasized that, 'if we don't grow gross

profits, we won't be here'"; (4) Mr. Dunn "reiterated his point . . . that 'we will all be in trouble

if we don't grow gross profits'"; and (5) Mr. Florence "then confirmed, 'That is correct.'"
Compl. ¶¶ 44, 47. These allegations do not concern present facts. Rather, they are opinions or
puffery. Messrs. Antle and Dunn's statements about what Frontenac would do to evaluate the
Officer Defendants and actions it would take are statements about future events, but not about
present facts. Similarly, the comments about what would happen to them if they failed to grow
gross profits are not facts, but predictions about the future profits of an enterprise.

Moreover, Plaintiffs allege that Mr. Florence stated that "Frontenac assessed the
performance of the managers of its portfolio companies based upon their ability to produce
revenue and gross profit growth." Compl. ¶ 46. However, Plaintiffs do not specifically allege
this statement was false. Nor do they allege facts to illustrate the falsity of this statement.
Therefore, the alleged misrepresentations about the Salient management's financial incentives to
maximize the company's gross profits cannot support fraud claims, either fraud in the
inducement or constructive fraud, in this case.

Third, with respect to the statements about past acquisitions, Plaintiffs cannot properly
plead that it relied on a misrepresentation when it also pleads that it investigated the alleged
misrepresentation. "[O]ne who seeks to hold another in fraud must clearly show that he has
relied upon the acts and statements of the other," but "he must be held not to have so relied when
it appears that he has made his own investigation, whether complete or not, into the subject
matter at hand." *Harris v. Dunham*, 127 S.E.2d 65, 70 (Va. 1962) (citation omitted). Here,
Plaintiffs allege that Defendants provided them with "a sampling of references from the
principals of certain companies that SI International had acquired." Compl. ¶ 40. Plaintiffs
allege that they contacted all of these individuals and confirmed the Defendants and SI
International had not engaged in litigation with those companies. Thus, knowing that the

references provided by Defendants do not include every company that SI International ever purchased, Plaintiffs contacted only individuals whose names were provided.  Nonetheless, their own investigation, albeit incomplete, precludes Plaintiffs from alleging that they relied on Defendants' statements regarding the subject matter at hand.  *See Harris*, 127 S.E.2d at 70. Therefore, allegations about past acquisitions cannot support fraud claims, either fraud in the inducement or constructive fraud, in this case.

Fourth, the allegation that Salient and Messrs. Antle and Dunn never intended, at the time they made the promise, to calculate the Performance Payment in a manner consistent with past practices is implausible.  Plaintiffs allege Messrs. Dunn and Antle repeatedly represented to the Principal Shareholders that "Defendants would calculate SGIS's 2010 gross profit for the purpose of determining the Performance Payment in precisely the same manner that SGIS had previously employed in its budgeting documents and the internal financial statements that the Principal Shareholders employed to manage SGIS." Compl. ¶ 52.  Plaintiffs further allege that "[b]y the time that Defendants extended the revised purchase offer and made the foregoing misrepresentations, they had already devised their plan to minimize SGIS's post-closing 2010 gross profits in order to avoid paying Plaintiffs any Performance Payment." Compl. ¶ 54. However, the terms of the SPA undermine the plausibility of the allegation that Defendants did not intend to calculate the Performance Payment in a manner consistent with past practices. Section 1.3(a)(i) of the SPA provides that the revenue and expenses utilized to calculate SGIS's 2010 gross profit had to be "determined in accordance with GAAP consistent with past practices and procedures of the [SGIS]."  Compl. Ex. A at 2.  Moreover, Section 1.3(c) of the SPA provides detailed steps to resolve any dispute the parties may have concerning the Performance Payment.  Essentially, the parties will submit the dispute to an unidentified accounting firm, and

24

the firm's determination of the amount of the Performance Payment is binding on the parties. Thus, if Defendants never intended to calculate the Performance Payment in a manner consistent with past practices when they made the promise, then agreeing to the terms mentioned above, especially the use of an unidentified accounting firm to determine the amount of the Performance Payment that will be binding on the parties, is highly inconsistent with their original intent.

Fifth, Plaintiffs allege that Defendants failed to disclose material facts to Plaintiffs prior to the closing of the acquisition. However, the alleged omissions are not actionable because (1) they do not concern material facts; and (2) even if they do concern material facts, Plaintiffs fail to allege that Defendants knew that Plaintiffs were acting upon the assumption that the facts did not exist. A party may commit fraud by "concealment," which the law treats as the equivalent of an affirmative misrepresentation. Concealment may constitute actual fraud where there is "evidence of a knowing and a deliberate decision not to disclose a material fact." *Norris v. Mitchell*, 495 S.E.2d 809, 812 (Va. 1998). Accordingly, actual fraud by concealment involves the intentional and willful nondisclosure "of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist." *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 597 (Va. 1984).

Here, Plaintiffs allege that Defendants failed to disclose what they intended to do or not to do. For example, Plaintiffs allege that Defendants failed to disclose to Plaintiff that they "intended to manipulate the calculation of SGIS's 2010 gross profit to reduce the Performance Payment to zero." Compl. ¶ 119. These alleged omissions do not appear to concern existing facts. Moreover, the Complaint does not contain factual allegations concerning Defendants' knowing and deliberate decisions not to disclose certain material facts to Plaintiffs. In other words, Plaintiffs fail to allege that Defendants intentionally and willfully concealed material

facts and that they knew that Plaintiffs were acting upon the assumption that the facts did not

exist. *See Allen Realty Corp.*, 318 S.E.2d at 597. Therefore, the Court grants Salient

Defendants' Motion to Dismiss Plaintiffs' First and Second Causes of Action against Salient and

Messrs. Antle and Dunn.

### 2. Fourth Cause of Action

The Court grants Salient Defendants' Motion to Dismiss Plaintiffs' Fourth Cause of

Action, Breach of the Implied Covenant of Good Faith and Fair Dealing, because the allegations

concern conduct that is addressed by the express terms of the contract. "The implied covenant

attaches to every contract" and "is best understood as a way of implying terms in the agreement,

whether employed to analyze unanticipated developments or to fill gaps in the contract's

provisions." *Dunlap v. State Farm Fire & Casualty Co.,* 878 A.2d 434, 441–42 (Del. 2005)

(internal quotation marks and citations omitted). "Existing contract terms control, however, such

that implied good faith cannot be used to circumvent the parties' bargain" *Id.* at 441. To state a

claim for a breach of implied covenant of good faith and fair dealings, a plaintiff "must allege a

specific implied contractual obligation, a breach of that obligation by the defendant, and

resulting damage to the plaintiff." *Kuroda v. SPJS Holdings, L.L.C.,* 971 A.2d 872, 888 (Del.

Ch. 2009) (citation omitted). Additionally, "[g]eneral allegations of bad faith conduct are not

sufficient." *Id.* "[T]he plaintiff must allege a specific implied contractual obligation and allege

how the violation of that obligation denied the plaintiff the fruits of the contract." *Id.*

"Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully."

*Id.* Furthermore, an implied covenant cannot be invoked when express terms of a contract are

designed to address a particular issue. *Id.* "[W]here the subject at issue is expressly covered by

the contract, or where the contract is intentionally silent as to that subject, the implied duty to

perform in good faith does not come into play." *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 23 (Del. Ch. 1992), *aff'd*, 609 A.2d 668 (Del. 1992).

Here, Plaintiffs' factual allegations are premised on Plaintiffs' obligations set forth in Section 1.3 of the SPA. Plaintiffs assert that Salient breached its implied covenant by (1) calculating the Gross Profit Statement in a manner that is inconsistent with past practices; (2) deliberately delaying the collection of revenue by Apptis as provided under Section 6.5 of the SPA; and (3) failing to resolve in good faith any disputes regarding the Gross Profit Statement as required by Section 1.3(c). Section 1.3(a)(1) of the SPA expressly dictates that revenue and expenses used to calculate the 2010 gross profit were to be "determined in accordance with GAAP [i.e. generally accepted accounting principles] consistent with past practices and procedures of the Company as set forth" in the SPA's Appendix. Section 6.5 of the SPA lays out the manner in which Salient must record its received income. Furthermore, Section 1.3(c) specifically provides the method, which parties should follow to resolve any disputes regarding the Gross Profit Statement. Thus, claims regarding Salient Defendants' miscalculations or Salient Defendants' inability to resolve disputes about the miscalculations in good faith have been addressed by the express terms of the contract. Therefore, the implied covenant cannot be invoked. Consequently, the Court grants Salient Defendants' Motion to Dismiss as to the Fourth Cause of Action.

### 3. Fifth Cause of Action

The Court grants Salient Defendants' Motion to Dismiss Plaintiffs' Fifth Cause of Action, violation of Va. Code §§ 18.2-499 and 500, because all of the alleged conspirators belong to a single legal entity, which cannot legally form a conspiracy. Section 18.2-499 of the Virginia Code encompasses conspiracies to "willfully and maliciously injur[e] another in his

27

reputation, trade, business or profession by any means whatever." VA. CODE ANN. § 18.2-499(A) (2009). Additionally, Section 18.2-500 of the Virginia Code allows victims of such conspiracies to recover treble damages and attorney's fees in a civil action. VA. CODE ANN. § 18.2-500(A) (2009). "To state a claim for a violation of the business conspiracy statute . . . a plaintiff must allege (1) a combination of two or more persons for the purpose of willfully and maliciously injuring a plaintiffs' business, and (2) resulting damage to the plaintiff." *SecureInfo*, 387 F. Supp. 2d at 616 (citations omitted). "The doctrine of intracorporate immunity, however, recognizes that a conspiracy requires two or more persons and that, because a corporation and its agents comprise a single legal entity, they are legally incapable of conspiracy." *Id.*

Here, Plaintiffs allege that "Defendants Salient [Federal], Salient [INC], Antle, Dunn, and Oleson willfully and maliciously conspired with Frontenac to injure Plaintiffs in their trade, business and profession by depriving them of their business entitlements, namely the fair value of their company, SGIS." Compl. ¶ 185. The Plaintiffs further allege that Salient Federal is a wholly-owned subsidiary of Salient INC and each of the Officer Defendants was working for Salient Federal. Moreover, as discussed above, Mr. Florence was Salient Federal's principal negotiator, and the Court grants Frontenac's Motion to Dismiss with respect to the First, Second, Fifth, and Sixth Causes of Action. Thus, the remaining Defendants are connected to the same legal entity and so they are legally incapable of forming a conspiracy. Therefore, the Court grants Salient Defendants' Motion to Dismiss Plaintiffs' Fifth Cause of Action.

### C. Salient Defendants' Motion to Compel Arbitration and Stay Proceeding

The Court grants Salient Defendants' Motion to Compel Arbitration and Stay Proceedings as to the Third Cause of Action because the SPA requires the disputes regarding the Gross Profit Statement be submitted to the Accounting Firm, which is well-suited to render a

final and binding determination. The Court denies as moot Salient Defendants' Motion to

Compel Arbitration and Stay Proceedings as to the Fourth Cause of Action because the Court has

dismissed the Fourth Cause of Action for failure to state a claim.

Disputes concerning the Gross Profit Statement in this case are within the scope of

Section 1.3(c) of the SPA and the determination by the Accounting Firm is binding. Section

1.3(b) requires that Salient Federal prepare the Gross Profits Statement, "which shall set forth the

amount of the Performance Payment, if any, and the calculation thereof, including the Total

Incremental Gross Profits." Compl. Ex. A at 3. Section 1.3(c) also provides "[i]f the Sellers'

Representative disputes any amount set forth in the Gross Profits Statement," the Representative

should provide Salient Federal "detailed written explanations of any disputed items in the Gross

Profits Statement" within thirty days of receipt of the statement. Compl. Ex. A at 3. It further

provides that "the Parties will attempt to resolve in good faith any disputed items and such

resolution" is "final and binding on the Parties." Compl. Ex. A at 3. However, "[i]n the event

the Buyer and the Sellers' Representative shall be unable to agree upon a joint determination of

the Gross Profits statement . . . the Buyer and the Sellers' Representative shall submit the

dispute to the Accounting Firm." Compl. Ex. A at 3. The parties "shall request that the

Accounting Firm render its determination," and "such determination and any required

adjustments resulting therefrom shall be final and binding." Compl. Ex. A at 3–4.

According to the SPA, after the Gross Profits Statement is prepared, in order to submit

the dispute concerning the statement to the Accounting Firm, two requirements must be met: (1)

Plaintiffs raise their dispute concerning the Gross Profits Statement timely and (2) the parties

cannot reach a resolution with respect to the dispute. The Court notes that Section 1.3(c)

mentions that if a dispute is raised timely, "the Parties will attempt to resolve in good faith any

disputed items" and reach a binding resolution. Compl. Ex. A at 3. However, the fact that the

SPA contains the phase "will attempt to resolve in good faith any disputed items," but not "shall

resolve in good faith any disputed items" indicates that "attempt to resolve in good faith any

disputed items" is a procedural mechanism in which parties may try to reach a binding resolution

before they hire an accounting firm to make a final and binding determination. Here, Plaintiffs

timely disputed the calculation of the Gross Profit Statement. After some communication or

dialog, albeit allegedly inadequate, the parties did not reach a resolution with respect to the

dispute. Therefore, Section 1.3(c) requires that they submit the matter to the Accounting Firm.

Moreover, an accounting firm is well-suited to resolve the dispute between the parties.

Plaintiffs dispute the manner in which the Gross Profit Statement was calculated. In particular,

Plaintiffs allege that revenue was incorrectly calculated because (1) Salient reduced the gross

profit by subtracting from the revenue expenses that were not subtracted from the baseline 2009

profit;  (2) Salient artificially reduced the revenue from which the 2010 gross profit was derived

by approximately $1.9 million by subtracting services rendered to companies Ingenium and

Mantech; and (3) Salient deliberately failed to recognize $1.4 million in revenue related to

services it provided to Apptis. Section 1.3(a) provided details for determining "Company Gross

Profits" and requires that the Gross Profits be "determined in accordance with GAAP [General

Accepted Accounting Principles] consistent with past practices and procedures" of SGIS.

Qualified accountants in the chosen accounting firm can readily apply GAAP standards and the

instructions set forth in the SPA to calculate the revenue and the Gross Profit of the company,

which then can be used to determine the Gross Profit of the company and the Performance

Payment.

Furthermore, the Court rejects Plaintiffs' argument that the existence of a venue clause renders the alternative dispute resolution mechanism involving an accounting firm set forth in Section 1.3 (c) of the SPA moot. "It is a well-known precept for the interpretation of contracts that specific provisions in a contract trump the general provisions." *Puerto Rico Tel. Co., Inc. v. SprintCom, Inc.*, 662 F.3d 74, 96 (1st Cir. 2011). Section 10.9 of the SPA, the venue clause, states that the parties agree that "any Proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement . . . shall be brought in any United States District Court for the Eastern District of Virginia . . . ." Compl. Ex. A at 75. Section 1.3 (c) of the SPA specifically addresses the situation where the parties have a dispute as to the Gross Profit Statement. In this case, the parties dispute the Gross Profit Statement. As such, the specific provision, Section 1.3(c), but not the more general provision, Section 10.9, governs here. Therefore, the Court grants Salient Defendants' Motion to Compel Arbitration and Stay Proceeding as to the Third Cause of Action. Additionally, because Salient Defendants' Motion to Dismiss as to the Fourth Cause of Action is granted, the Court denies their Motion to Compel Arbitration and Stay Proceeding as to the Fourth Cause of Action as moot.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant Frontenac's Motion to Dismiss is GRANTED. It is further

ORDERED that Defendants Salient Solutions, Inc., Salient Federal Solutions, Inc., Ted Dunn, S. Bradford Antle, and Ray Oleson's Motion to Dismiss is GRANTED. It is further

31

ORDERED that Defendants Salient Solutions, Inc., Salient Federal Solutions, Inc., Ted Dunn, S. Bradford Antle, and Ray Oleson's Motion to Compel Arbitration As to Counts 3 and 4 of the Complaint Claiming Breach of Contract and for a Stay of Any Tort Claims which Survive Dismissal is GRANTED as to the Third Cause of Action of the Complaint and the Motion is DENIED as moot with respect to the remaining issues.  It is further

ORDERED that the Third Cause of Action of the Complaint is referred to the appropriate Accounting Firm for further determination pursuant to the Stock Purchase Agreement.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this _____ day of July, 2012.


Alexandria, Virginia

7/9  /12

_____/s/_____
Gerald Bruce Lee
United States District Judge